UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BERNARD DELCARPIO (#119047)                                  CIVIL ACTION

VERSUS

N. BURL CAIN, ET AL.                                         NO. 13-0273-SDD-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 8, 2015.

                                                                RICHARD L. BOURGEOIS, JR.
                                                               UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**BERNARD DELCARPIO (#119047)**        **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**        **NO. 13-0273-SDD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' Cross-Motions for Summary Judgment (R. Docs. 17 and 23).

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden N. Burl Cain, Dr. Jason Collins, Dr. Randy Lavespere and three (3) unidentified "John Doe" security officers employed at LSP, complaining that the defendants violated his constitutional rights on August 31, 2012, when the "John Doe" defendants failed to immediately transport him to the prison infirmary after he was brutally attacked by several co-inmates and, instead, interrogated him for several hours and mishandled his personal property. The plaintiff further complains that the defendant physicians thereafter exhibited deliberate indifference to his serious medical needs by failing to provide appropriate medical care for his injuries and complaints. Finally, the plaintiff complains of alleged wrongful policies in effect at LSP that have resulted in a shortage of qualified physicians, in the practice of medicine by untrained and unqualified medical technicians, and in the distribution of medication to inmates, and in deficiencies in security.[1]

---

1. A review of the record reflects that the "John Doe" defendants have not been identified or served. When the plaintiff was directed to provide information to the United States Marshal's Office relative to the identities of the defendants to be served – specifically by

The plaintiff moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a sworn Declaration submitted by him under penalty of perjury, a copy of his original administrative grievance dated September 24, 2012, excerpts from his prison medical records, a sworn statement prepared by co-inmate George Toca submitted "under penalty of perjury" and dated March 12, 2013, and copies of written discovery propounded by the plaintiff to the defendants in April, 2013.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of excerpts from the plaintiff's medical records, a certified copy of the plaintiff's pertinent administrative remedy proceedings, and the affidavits of Trish

---

completing and returning a Marshal's Form 285 – the plaintiff did not initially do so and, when he later submitted the referenced Form, he did not include the "John Doe" defendants in the list of defendants. *See* R. Doc. 12. As a result, these defendants were not served and have not appeared in this proceeding. In addition, the plaintiff has failed thereafter to take appropriate action to amend the Complaint to identify the "John Doe" defendants or to obtain service upon them. Although an inmate plaintiff is entitled to rely upon service by the United States Marshal, "a plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should attempt to remedy any apparent service defects of which a plaintiff has knowledge." *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987). In the instant case, the plaintiff clearly had knowledge of non-service of the "John Doe" defendants because (1) he provided the referenced 285 Form to the Marshal's Office omitting the "John Doe" defendants, (2) he was thereafter served with the Marshal's Return of Service, R. Doc. 14, that indicated that service had not been effected upon the "John Doe" defendants at the offices of the Louisiana Department of Public Safety and Corrections, and (3) he has been served with all subsequent pleadings which reflect no appearance having been made by these defendants. In addition, whereas the plaintiff may have experienced difficulty in initially obtaining the identities of the "John Doe" defendants, *see* R. Doc. 20 (wherein he expressed a belief that the defendants were unilaterally obligated to provide this information without further action on his part), he thereafter propounded written discovery to the defendants seeking those identities, and the defendants responded to that discovery on June 17, 2004, *see* R. Docs. 21 and 24. Notwithstanding, the plaintiff has not since moved to amend the Complaint to better identify the "John Doe" defendants and has not since taken any action to have them served. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff, without good cause, to serve a defendant within 120 days of commencement of an action is justification for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against the "John Doe" defendants be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon them.

Foster and defendants Jason Collins, Randy Lavespere and Burl Cain.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual

disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges that on August 31, 2012, he was attacked from behind by three co-inmates in the LSP recreation yard and was severely beaten, causing him to suffer a fractured leg, a fractured nose, and a fractured facial bone. The referenced attack was not observed by any correctional officers because the plaintiff was sitting behind a "large, metal electrical transformer" located in the recreation yard that obstructed a view of the area and that has since been removed. The plaintiff complains that, instead of immediately transporting him to the prison infirmary for medical treatment, the three "John Doe" correctional officers placed him in a cell in administrative segregation and proceeded to question him for 3-4 hours about the incident, seeking information about the assailants. During the interrogation, these defendants also conducted a search of the plaintiff's personal property, mishandling and misappropriating items in an attempt to induce the plaintiff to provide information. Finally, after completing the interrogation, after making the plaintiff re-pack his property, and after making the plaintiff wait in the lobby of his housing unit for an additional period of time, a wheelchair was provided to take the plaintiff to the infirmary.

Upon arrival at the infirmary, the plaintiff complains that four unidentified medical technicians continued to question him about the incident while they took x-rays of the plaintiff's face and leg and waited for the on-call physician to arrive. Defendant Dr. Randy Lavespere thereafter arrived, but the plaintiff complains that defendant Lavespere failed to conduct an examination. The plaintiff concedes, however, that Dr. Lavespere informed the plaintiff regarding the fractures sustained and that a medical technician placed a splint on the plaintiff's

leg.² The plaintiff asserts that, in light of the severity of his injuries, Dr. Lavespere should have assigned the plaintiff to the acute care medical ward, where the plaintiff could be administered stronger pain medication. Instead, the plaintiff complains that he was returned to his original housing unit, where he had to climb stairs to get to his cell, where he was not given an assignment to a requested lower bunk or to a first-floor cell, where his emphysema was aggravated by the heat in his cell and by his broken nose, and where he was provided only with Tylenol for pain. When the plaintiff complained in writing to an LSP Ass't Warden, Kenneth Norris (not named as a defendant herein³), Warden Norris responded that the plaintiff had an upcoming medical appointment and should address his complaints through established sick call procedures. The plaintiff alleges that he thereafter submitted sick call requests to the prison medical department on numerous dates, including September 3 and 7, November 27, December 3, 4 and 16, 2012, and March 20, 2013, but he complains that the assigned medical technicians have failed to provide him with appropriate assistance, medication or treatment and have failed to allow him to see a physician. The plaintiff complains that he has been forced to walk to the dining hall for his meals instead of being allowed to eat his meals in his housing unit, and that this has caused him to lose weight and strength "from poor diet and lack of adequate dietary nutrients." Finally, the plaintiff complains that his wheelchair has since been taken from him

---

2. In his Complaint, the plaintiff refers to a "stent" having been placed on his leg, but it appears that the plaintiff instead intended to refer to the application of a stabilizing splint at the site of the fracture. *See* R. Doc. 17-4 at p. 2.

3. Although the plaintiff refers, on page 17 of his 34-page Complaint, to "defendant" Kenneth Norris, the plaintiff did not identify this person as a defendant in the Caption of the Complaint or in the section of the Complaint form designated for identifying the parties to the proceeding. Nor did the plaintiff identify Kenneth Norris as a person who should be served when the plaintiff returned the Marshal's Form 285 to the Court so that service could be effected upon the defendants. Accordingly, the Court does not consider Kenneth Norris to be a defendant in this proceeding.

and that his crutches were taken on April 23, 2013.

In response to the plaintiff's claims, the defendants assert several defenses, but the Court will first address the defendants' contention regarding the alleged failure of the plaintiff to exhaust administrative remedies relative to certain of his claims. In this regard, pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[4] This provision is mandatory and applies broadly to "all inmate suits about prison life". *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525. Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id.*

Upon a review of the plaintiff's pertinent administrative grievance, *i.e.,* the grievance that he filed relative to the claims asserted in this proceeding, the Court concludes that the defendants' argument is well-taken and should be accepted. Specifically, it appears that the

---

4. 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

plaintiff submitted the referenced grievance to prison officials on or about September 24, 2012, approximately three weeks after the incident of August 31, 2012, and he complained therein only (1) of the actions of the three "John Doe" security officers in interrogating him and in failing to transport him to the infirmary for 3-4 hours thereafter, (2) of the misappropriation and mishandling of his legal and personal property by the "John Doe" officers during that interrogation, (3) of the failure of defendant Dr. Lavespere to physically examine the plaintiff or issue the plaintiff a duty status for a bottom bunk on that date, and (4) of the actions of one or more unidentified medical technicians, who allegedly improperly charged the plaintiff for medical treatment on September 4, 2012, couldn't locate the plaintiff's file, refused to provide pain medication stronger than Tylenol, and subjected the plaintiff to verbal abuse. Thus, the totality of the plaintiff's pertinent administrative grievance relates solely to events occurring during a five-day period between August 31 and September 4, 2012. The referenced grievance includes no assertions regarding any alleged mistreatment after the latter date. Further, there is no reference whatever in the referenced grievance to any claim by the plaintiff regarding being improperly returned to his housing unit after the attack instead of being assigned to the medical ward, of being refused a request for re-assignment to a first-floor housing unit, of excessive heat in his housing unit, of thereafter being required to walk to and from the prison dining hall, of the later taking of his wheelchair and crutches, or of any alleged failure to provide medical treatment or to meet his dietary needs after September 4, 2012. Nor is there any reference whatever in the referenced grievance to any specific misconduct by defendants Warden Burl Cain or Medical Director Jason Collins, to any alleged security "blind spots" in the prison recreation yard purportedly used by prison officers to allow the infliction of harm upon inmates, or to any alleged wrongful policies that have resulted in an insufficient number of physicians available to

inmates or to medicine allegedly being improperly dispensed or improperly practiced by medical technicians. Thus, the Court concludes that the plaintiff's administrative grievance failed to provide sufficient notice to prison administrators that the plaintiff was attempting to assert claims of this nature so as to "provide administrators with a fair opportunity under the circumstances to address the problem[s]" now sought to be presented before this Court. *See Johnson v. Johnson, supra*, 385 F.3d at 517. Accordingly, the Court finds that all of the plaintiff's claims asserted against defendants Burl Cain and Jason Collins should be dismissed, as should all of the plaintiff's claims relative to events occurring after September 4, 2012, to being returned to his housing unit on August 31, 2012, and to excessive heat in his housing unit, for failure of the plaintiff to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e relative to such claims.

Turning to the plaintiff's claim asserted against the single remaining defendant, Dr. Randy Lavespere, the Court will next address the defendant's contention that he is entitled to qualified immunity in connection with the plaintiff's claims. Specifically, defendant Lavespere contends that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established.

*Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[5]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims asserted against defendant Lavespere, the Court finds that the defendant's motion should be granted. Specifically, the Court finds that the plaintiff has failed to make an evidentiary showing sufficient to show the existence of any disputed issue of material fact relative to this defendant in this case. As pertinent to defendant Lavespere, the plaintiff's allegations relate only to a single interaction between the plaintiff and this defendant on August 31, 2012, at which time, according to the plaintiff, the defendant failed to properly attend to the plaintiff's serious injuries.[6] In this

---

5. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

6. None of the other claims asserted in this proceeding implicate any specific wrong-doing by defendant Lavespere.

regard, an inmate who seeks to assert a claim regarding inadequate medical care under § 1983 must be able to show that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra*. Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing principles, the Court finds that the plaintiff has failed to allege facts or produce evidence suggesting that defendant Lavespere exhibited deliberate indifference to the plaintiff's serious medical needs. It appears from the evidence adduced by the defendant that the plaintiff was seen on only one occasion by the defendant during the relevant time period,

and neither the plaintiff's medical records nor the plaintiff's allegations of fact suggest that the defendant ignored the plaintiff's complaints at that time or deliberately disregarded a perceived "substantial risk of serious harm." The plaintiff condition was evaluated through the use of diagnostic x-rays, and the plaintiff acknowledges that Dr. Lavespere advised the plaintiff as to the fractures exhibited on those x-rays. The plaintiff further acknowledges that his broken leg was splinted and that he was provided with medication for pain, albeit not the medication that the plaintiff believes should have been provided. The plaintiff was also provided with crutches with which to ambulate. Whereas the plaintiff believes that the defendant should have prescribed stronger pain medication, should have performed a more thorough physical examination, or should have re-assigned the plaintiff to a lower bunk, to a first-floor housing unit, or to the prison medical ward, these are complaints reflecting a mere disagreement with the treatment and care determined to be appropriate by the attending physician.[7] According to the affidavit of Dr. Randy Lavespere, submitted in support of the defendants' Motion for Summary Judgment, *see* R. Doc. 17-4, the medical assessment and treatment provided to the plaintiff on the referenced date were "proper" and were not reflective of deliberate medical indifference. The plaintiff has not refuted the factual assertions contained in the referenced affidavit. Based upon this showing, the Court finds that the plaintiff's claim in this case amounts to little more than a claim of negligence or generalized malpractice that is not actionable under § 1983. In short, there is no showing in the record that defendant Lavespere refused to treat the plaintiff, ignored the plaintiff's symptoms or complaints, intentionally treated the plaintiff incorrectly or otherwise engaged in conduct reflecting a wanton disregard for a serious medical need. On the

---

7. In fact, it appears that the plaintiff had previously been issued a bottom bunk assignment on August 16, 2012, by another LSP physician. *See* R. Doc. 17-4 at pp. 2 and 5.

showing made, therefore, the plaintiff has not presented evidence sufficient to rebut the defendant's evidentiary showing or to show the existence of a genuine disputed issue of material fact regarding whether defendant Lavespere was deliberately indifferent to the plaintiff's serious medical needs. Accordingly, this defendant is entitled to summary judgment as a matter of law in connection with the plaintiff's claims.[8]

RECOMMENDATION

It is recommended that the plaintiff's claims asserted against the unidentified "John Doe" security officer defendants be dismissed, without prejudice, for failure of the plaintiff to serve these defendants within 120 days as mandated by Fed. R. Civ. P. 4(m). It is further recommended that the plaintiff's Motion for Summary Judgment (R. Doc. 23) be denied and that the defendants' Motion for Summary Judgment (R. Doc. 17) be granted, dismissing the plaintiff's claims asserted against the defendants, in part for failure to exhaust administrative remedies as mandated by 42 U.S.C. § 1997e, and in part for failure to state a claim upon which relief may be granted under 42 U.S.C. 1983, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on January 8, 2015.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

---

8. The plaintiff includes an additional claim in his Complaint that he was wrongly charged one or more monetary fees for medical treatment relative to the incident of August 31, 2012. Not only is this claim not one of constitutional magnitude cognizable under § 1983, but it appears, in any event, that these fees were refunded to the plaintiff in response to his administrative grievance. *See* R. Doc. 15-2 at p. 4.